IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | |
|---|---|
| LORI A. J., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:22cv131 |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Lori A. J. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 7.

Presently before the Court are the parties' cross Motions for Summary Judgment, ECF Nos. 9, 11. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for

Summary Judgment, ECF No. 11, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed an application for DIB on October 11, 2019, alleging disability due to: broken neck fused C4, 5, 6, bone growing over plate; zero cartilage in left and right knees; arthritis, right foot, joint replaced; food bacteria ate one half intestinal lining, colitis/Crohn's; vertigo from bone growth after neck fusion; depression; and arthritis in back, neck, left knee, and right knee. R. at 64–65.[1] Plaintiff alleged a disability onset date of October 1, 2019. *Id.* at 65. Plaintiff's application was initially denied on February 5, 2020, and again denied upon reconsideration on May 29, 2020. R. at 95, 107. On July 20, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 110.

A hearing was held on October 7, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Maryann Bright ("the ALJ"). R. at 34–63. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 40–62. On October 26, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 15–33. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on February 10, 2022, making the ALJ's decision the final decision of the Commissioner. R. at 1–6.

Having exhausted her administrative remedies, on April 1, 2022, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On August 15, 2022, Plaintiff filed a Motion for Summary Judgment and accompanying brief in support. ECF Nos. 9–10. On September 12, 2022, the Commissioner filed a Motion for Summary Judgment and accompanying

---

[1] "R." refers to the certified administrative record that was filed under seal on June 13, 2022. ECF No. 6, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

memorandum in support. ECF Nos. 11–12. Plaintiff did not file a reply. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review: Plaintiff was fifty-three years old at the time of her alleged disability onset date of February 24, 2020.[2] R. at 64. Plaintiff lives with her husband. R. at 40. Plaintiff graduated from high school and completed approximately three years of college. R. at 41. Plaintiff previously worked as a mortgage loan officer and is not currently working.[3] R. at 41–43.

### A. Plaintiff's Medical Records Relevant to Her Alleged Physical and Mental Impairments[4]

Plaintiff has mental health impairments, and reported they first began in 2018 secondary to health issues. R. at 438. Plaintiff began mental health treatment on February 24, 2020. R. at 37–38, 1105. Plaintiff's therapist Stacey Kiger, LPC ("Kiger"), from Reboot: Mind, Body, Health DBA: Beach Counseling, diagnosed Plaintiff with other specified depressive disorder and other specified anxiety disorder. R. at 1108. Plaintiff reported her mental health impairments were caused by stress due to a fraud lawsuit, a dental lawsuit, issues surrounding the COVID-19 pandemic, health concerns, and prior abuse. R. at 947, 1072, 1108, 1110, 1112, 1114, 1134. Plaintiff's medical records show she had mental health treatment appointments from February 24, 2020 to August 16, 2021. R. at 947–58, 1105–35, 1165–72. Plaintiff was prescribed medication for her mental health impairments, including: Wellbutrin, Sertraline, Zoloft, Xanax, and

---

[2] Plaintiff amended her disability onset date to February 24, 2020, at the ALJ hearing. R. at 37.
[3] There is conflicting evidence as to when Plaintiff last worked. Plaintiff testified at the ALJ hearing that she has not worked since October 1, 2019. R. at 41. However, Plaintiff's medical records state she reported working as a self-employed financial analyst in 2020 and as late as January 2021. R. at 776, 814.
[4] Although Plaintiff's physical impairments are not at issue, both parties address them in their briefs, so the Court briefly recounts Plaintiff's medical records relating to her physical impairments.

Alprazolam. R. at 471, 929, 1048, 1056, 1072. Plaintiff's medical records consistently report Plaintiff as stable or doing well on her medications. *Id.*

In a medical source statement, Kiger opined that Plaintiff has an extreme impairment in her ability to maintain concentration/focus; a marked impairment in her ability to carry out short/simple instructions, perform at a consistent pace, respond to changes in routine, and deal with normal work stress; a moderate impairment in her ability to get along with co-workers and supervisors; and a mild impairment in her ability to get along with the general public. R. at 766. Kiger also opined that Plaintiff has symptoms related to her mental health impairments: appetite disturbance, sleep disturbance, mood swings, decreased energy, difficulty with focus/concentration, isolation/emotional withdrawal, persistent anxiety, anxiety attacks, racing thoughts, autonomic hyperactivity in response to anxiety, and some symptoms related to PTSD. R. at 766. Kiger opined Plaintiff would be absent from work four or more days each month because of her mental health impairments. R. at 766.

Plaintiff also has physical impairments unrelated to her appeal in this Court. Plaintiff has neck pain and in December 2007 underwent surgery fusing C3, 4, and 5 and inserting a titanium plate and cadaver. R. at 269, 433. Plaintiff has osteoarthritis of both knees and chondromalacia patella of both knees. R. at 422–23. Plaintiff had left knee replacement surgery in August 2020 and right knee replacement surgery in December 2020. R. at 502, 511. In September 2018, Plaintiff had a left subclavian artery primary stent for subclavian arterial stenosis related to a previous car accident. R. at 361–62. Plaintiff has ulcerative colitis-pancolitis. R. at 456. Plaintiff has had flu and bronchitis, R. at 353, food poisoning, R. at 503, vitamin D deficiency, R. at 475, hypothyroidism, R. at 474, hyperglyceridemia, R. at 475, back muscle spasms, R. at 475, and

moderate obstructive sleep apnea, R. at 851. Plaintiff has had right foot surgery, R. at 433, and a tonsillectomy and tubal ligation, R. at 502–03.

### B. Relevant Physical and Mental Evaluations Completed by State Agency Examiners

At the initial level, Dr. Bert Spetzler, M.D., reviewed Plaintiff's medical history. R. at 64–78. Dr. Spetzler found that Plaintiff's severe impairments include spine disorders, osteoarthrosis and allied disorders, and inflammatory bowel disease. R. at 70. Dr. Spetzler also found that Plaintiff's non-severe impairments include depressive disorder, bipolar disorder, and related disorders, as well as anxiety and obsessive-compulsive disorders. R. at 70. Dr. Spetzler found Plaintiff's limitations included: chronic neck and bilateral knee pain, fatigue; vertigo; decreased range of motion of neck and bilateral knee flexion; slow, antalgic, and limping gait; and ulcerative colitis with uncontrollable bowel movements. R. at 74. Dr. Spetzler opined that Plaintiff is capable of limited light work, R. at 70, and that she is able to lift and or carry twenty pounds occasionally, lift and or carry ten pounds frequently, and push and or pull unlimited, R. at 70, 73. Dr. Spetzler further opined that Plaintiff is able to stand and or walk for four hours and sit about six hours in an eight-hour workday, R. at 73; that she is occasionally able to climb ramps or stairs, stoop, kneel, and crouch; never climb ladders, ropes, or scaffolds or crawl; and frequently balance; R. at 74; and that she has no manipulative, visual, or communicative limitations, but does have environmental limitations, *Id.*

At the initial level, Dr. Stephen P. Saxby, Ph.D., reviewed Plaintiff's mental health records and opined that Plaintiff's mental health impairments are not severe. R. at 71. Dr. Saxby found Plaintiff has: no limitation in understanding, remembering, or applying information; no limitation in interacting with others; a mild limitation in concentration, persistence, or maintaining pace; and a mild limitation in adapting or managing herself. R. at 71.

5

At the reconsideration level, Dr. David Bristow, M.D., reviewed Plaintiff's medical history. R. at 79–94. Dr. Bristow found Plaintiff's mental health impairments to be non-severe. R. at 85. Dr. Bristow opined that Plaintiff can lift and or carry twenty pounds occasionally and ten pounds frequently; that she can stand and or walk for four hours, sit for six hours in an eight hour workday; and that she is limited in her lower extremities in her ability to push and or pull. R. at 89. Dr. Bristow further opined that Plaintiff is able to occasionally climb ramps or stairs, and stoop; never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl; and frequently balance. R. at 90. Finally, Dr. Bristow opined that Plaintiff has no manipulative, visual, or communicative limitations, but does have environmental limitations. R. at 90.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified she was five feet seven inches tall and weighed two hundred pounds. R. at 40. She testified she was married and lived with her husband, but does not have children. R. at 40. Plaintiff graduated from high school and completed approximately three years of college courses. R. at 41.

As to her ability to get around and take care of herself, Plaintiff has her driver's license and is able to drive herself to her doctor's appointments. R. at 41. She is able to prepare food for herself and cooks for herself and for her husband. R. at 48–49. Plaintiff's husband cleans and picks up groceries that Plaintiff orders. R. at 49. Plaintiff gardens flowers and plants, does Bible study, and does arts and crafts with little girls in her neighborhood. R. at 49–50, 55–56. She exercises by walking, and Plaintiff is able to stand and walk for about thirty minutes before needing a fifteen-to-twenty-minute break. R. at 50-51. Plaintiff also testified about her physical and mental impairments. R. at 45–56. She has knee pain, neck pain, spine pain, right shoulder blade pain, incontinence and uncontrollable bowel movements, anxiety, panic attacks, and depression. R. at

51–55. Plaintiff testified she cannot lift, cannot carry items all the time, has trouble staying awake, cannot do much with her left arm, and is only able to sit or lay down when she has pain flare-ups. R. at 45–46, 52. Plaintiff takes medication for her mental and physical impairments. R. at 47–48, 54.

As to her work experience, Plaintiff testified she has not worked since October 1, 2019, because her previous employer was investigated. R. at 41–42. Plaintiff previously worked as a mortgage loan officer at NVR Mortgage, Wells Fargo, Morgan Chase, MetLife, Fulton Bank, Sun Trust, and CTX Mortgage. R. at 42–43. In her previous positions, Plaintiff went to construction sites, met with new home buyers, analyzed and collected buyers' financial information, helped buyers get to closing, managed operations, set up and staffed marketing events, and drove to sites and meetings. R. at 42–45.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 404.1545(a). At step

four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 404.1520(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law: at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 24, 2020. R. at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: status post total knee replacements, obesity, cervical disc disorder, and ulcerative colitis. R. at 17. The ALJ also found Plaintiff has non-severe impairments including obstructive sleep apnea, hypothyroidism, Vitamin D deficiency, other specified depressive episodes, and other specified anxiety disorder. R. at 17–18. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. at 20.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations: she is able to occasionally

8

push and pull with her bilateral lower extremities; occasionally climb ramps and stairs, stoop, and crouch; not climb ladders, ropes, or scaffolds, crawl, or kneel; can balance on even surfaces; should avoid walking, standing, and crouching upon very narrow, slippery, or erratically moving surfaces; can tolerate occasional exposure to extreme heat, extreme cold, and vibration; and avoid all exposure to hazards of unprotected heights and dangerous, unguarded machinery. R. at 21–22. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. [§] 404.1529 and SSR 16-3p." R. at 22.

In deciding what RFC limitations to include, the ALJ did consider Plaintiff's non-severe mental impairments. R. at 22. The ALJ noted Kiger's opinion that Plaintiff has marked and extreme mental limitations, but the ALJ found the opinion unsupported by the record. R. at 26 (citing R. at 766). The ALJ also highlighted that Plaintiff's medical records report she has stress from a pending fraud case, Plaintiff recognized her own stress, and Plaintiff asked for an increase in her medication. R. at 26 (citing R. at 1108, 1112). The ALJ was persuaded by the state agency psychological consultants' opinions that Plaintiff's depression and anxiety are not severe and found they are consistent with the evidence and Plaintiff's stability from taking her medications. R. at 26–27 (citing R. at 64–77, 79–93).

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a mortgage loan officer, because it is generally considered sedentary level work, even though it was actually performed by Plaintiff at the medium exertional level. R. at 27 (citing 249–63, 281–89). The ALJ based her finding that the Plaintiff can perform her past relevant work on

the VE's testimony. R. at 27. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, October 1, 2019, through the date of her decision, October 26, 2021.[5] R. at 27.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "'evidence as a reasonable mind might accept as adequate to support a conclusion[.]'" *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "'conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ).'" *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial

---

[5] Although the Plaintiff amended her alleged disability onset date to February 24, 2020, at the ALJ hearing, R. at 37, the ALJ listed October 1, 2019 as Plaintiff's disability onset date in the ALJ decision. R. at 27. However, inasmuch as the ALJ found Plaintiff not disabled "through the date of this decision," this mistake is not material. *Id.*

10

of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises one challenge to the ALJ's decision. Plaintiff alleges that the ALJ erred by failing to include mental limitations in the RFC analysis to account for mild limitations in her ability to concentrate, persist, or maintain pace, and to adapt and manage herself.

### A. The ALJ Did Not Err by Not Including Mental Limitations for Plaintiff's Mild Limitations in her Abilities to Maintain Concentration, Persistence, and Pace, and Adapt and Manage Herself.

Plaintiff argues the ALJ erred by not including mental limitations in the RFC analysis when the ALJ found Plaintiff has mild impairments in her ability to maintain concentration, persistence, and pace, and in her ability to adapt and manage herself. ECF No. 10 at 9–14. Plaintiff argues the RFC should include all of Plaintiff's limitations and their combined effects. ECF No. 10 at 9. Plaintiff also argues that because Social Security regulations distinguish between mild and no limitations, that mild limitations warrant inclusion in the RFC analysis. ECF No. 10 at 9–10. Plaintiff cites cases from other jurisdictions to argue omitting a mild mental functional impairment in the RFC analysis is erroneous. ECF No. 10 at 11–14.

In response, the Commissioner argues that the ALJ's analysis and consideration of Plaintiff's mental impairments is supported by substantial evidence. ECF No. 12 at 11–19. The Commissioner contends that the ALJ did consider Plaintiff's mental impairments in the RFC analysis, and in reading the ALJ's decision as a whole, the ALJ's analysis appropriately included consideration of Plaintiff's mild limitations, noting that those limitations were due to Plaintiff's physical impairments. ECF No. 12 at 13–16. The Commissioner further argues that Plaintiff's claim of legal error is not supported by prior cases from this Court. ECF No. 12 at 17–19.

11

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 404.1520(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." § 404.1545(a)(1). In making the RFC determination, the ALJ must consider "all of the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's credible complaints. § 404.1545(a)(3). In determining the claimant's RFC, the ALJ must "'identify the individual's functional limitations'" and then assess the individual's "'work-related abilities on a function-by-function basis,'" including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (citing SSR 96-8p, 1996 WL 362207, at *34475 (July 2, 1996)). The ALJ must include a "'narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Mascio*, 780 F.3d at 636 (citing SSR 96-8p, 1996 WL 362207, at *34474 (July 2, 1996). The ALJ also must "'build an accurate and logical bridge from the evidence to [the ALJ's] conclusion'" in order to allow the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

To start, an ALJ's decision should be read as a whole, not in piecemeal portions. *Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011). Additionally, an ALJ need not repeat medical evidence in every portion of the decision; reviewing medical evidence once is sufficient. *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002).

ALJs may identify a physical or mental impairment that does not affect a plaintiff's functional abilities. For example, by definition, non-severe impairments do not significantly limit

12

a person's physical or mental ability to do basic work activities. § 404.1522(a). Similarly, if a functional limitation has only a "de minimis" effect on a Plaintiff's RFC, the ALJ is not required to incorporate those limitations. *Kimberly G. v. Comm'r of Soc. Sec.*, No. 2:21cv45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, No. 2:21cv45, 2022 WL 882165 (E.D. Va. Mar. 24, 2022). Additionally, "remand [is not] required when the ALJ fail[s] to give an explanation [as to why an RFC limitation was not included] in the presence of mild limitations [in understanding, remembering, and applying information and in concentration, persistence, or pace] only." *Younger v. Berryhill*, No. 2:18cv182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019), *report and recommendation adopted*, No. 2:18cv182, 2019 WL 3451305 (E.D. Va. July 29, 2019). Although an ALJ must consider a plaintiff's non-severe impairments, "there is no requirement that the RFC reflect a [plaintiff's] non-severe impairments to the extent the ALJ reasonably determines such impairments do not actually create functional limitations on a [plaintiff's] ability to work." *Perry v. Colvin*, No. 2:15cv01145, 2016 WL 1183155, at *5 (S.D. W.Va. Mar. 28, 2016). Furthermore, an ALJ is not required to discuss non-severe impairments in the RFC analysis so long as the ALJ considered them in the decision. *Caryn D.M. v. Kijakazi*, No. 4:21cv40, 2022 WL 4544737, at *7 (E.D. Va. June 8, 2022), *report and recommendation adopted*, No. 4:21cv40, 2022 WL 4541636 (E.D. Va. Sept. 28, 2022).

  The Fourth Circuit chose to not create an absolute rule requiring ALJs to always account for moderate limitations in concentration, persistence, or pace with a limitation in the RFC. *Mascio*, 780 F.3d at 638. ALJs can choose instead to provide an explanation why a moderate limitation does not necessitate a specific limitation in the RFC. *Id.* Put another way, in the Fourth Circuit, when confronted with moderate limitations in concentration, persistence, and pace, ALJs

must account for those limitations in the RFC analysis, or provide an explanation why limitations are not warranted. *See Shinaberry v. Saul*, 952 F.3d 113, 121 (2020).

This Court has routinely declined to require ALJs to include RFC limitations for ***mild***, non-severe impairments. *Younger*, No. 2:18cv182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019), *report and recommendation adopted*, No. 2:18cv182, 2019 WL 3451305 (E.D. Va. July 29, 2019); *Camille B. v. Kijakazi*, No. 2:20cv262, 2021 WL 5179197, at *7 (E.D. Va. July 16, 2021), *report and recommendation adopted*, No. 2:20cv262, 2021 WL 4205341 (Sept. 15, 2021) *rev'd on other grounds sub nom. Brooks v. Kijakazi*, 60 F.4th 735 (4th Cir. 2023); *Kimberly G.*, No. 2:21cv45, 2021 WL 8086729, at *10 (E.D. Va. Dec. 7, 2021), *report and recommendation adopted*, No. 2:21cv45, 2022 WL 882165 (E.D. Va. Mar. 24, 2022); *Sandra P. v. Kijakazi*, No. 2:21cv127, 2022 WL 815463, at *7 (E.D. Va. Mar. 1, 2022), *report and recommendation adopted*, No. 2:21cv127, 2022 WL 811295 (E.D. Va. Mar. 16, 2022); *Allen v. Kijakazi*, No. 2:21cv386, 2022 WL 4140088, at *10 (E.D. Va. Aug. 19, 2022), *report and recommendation adopted*, No. 2:21cv386, 2022 WL 4137821 (E.D. Va. Sept. 12, 2022).

In *Younger*, this Court specifically declined to find that ALJs are required to account for mild limitations in concentration, persistence, or pace in a plaintiff's RFC. *Younger*, No. 2:18cv182, 2019 WL 3432771, at *5 (E.D. Va. June 21, 2019) *report and recommendation adopted*, No. 2:18cv182, 2019 WL 3451305 (E.D. Va. July 29, 2019). The ALJ in *Younger* determined that the plaintiff had mild limitations in understanding, remembering, and applying information; mild limitations in concentration, persistence, or pace; moderate limitations in interacting with others; and no significant limitations in adapting or managing oneself. *Id.* at *3. In the decision, this Court highlighted that *Mascio* has not been extended to require an ALJ to account for mild limitations in the RFC analysis. *Id.* at *5.

The court in *Camille B.* reasoned that the ALJ identified medical opinions in the record that opined that the plaintiff's mental impairments were non-severe and did not warrant work-related mental limitations. *Camille B.*, No. 2:20cv262, 2021 WL 5179197, at *7 (E.D. Va. July 16, 2021), *report and recommendation adopted*, No. 2:20cv262, 2021 WL 4205341 (Sept. 15, 2021) *rev'd on other grounds sub nom. Brooks v. Kijakazi*, 60 F.4th 735 (4th Cir. 2023).[6] Relying on *Mascio* and *Younger*, the court in *Camille B.* similarly declined to require an ALJ "to include specific RFC restrictions directed to mild limitations associated with [] non-severe impairments." *Id.* at *8. The court in *Camille B.* emphasized the fact that non-severe impairments "do not significantly limit a claimant's ability to do basic work activities." *Id.* (citing § 404.1522(a)).

Here, the ALJ discussed the Plaintiff's mental impairments in detail. R. at 18–23. The ALJ found the Plaintiff has other specified depressive episode and other specified anxiety disorder, and the ALJ found both to be non-severe. R. at 18. The ALJ cited Plaintiff's mental health symptoms, including panic attacks while driving, being tearful, lacking motivation, and having trouble with concentration and distraction. R. at 23.

The ALJ further addressed why she found a mild limitation in Plaintiff's ability to maintain concentration, persistence, and pace. The ALJ found this because Plaintiff reported she has problems with memory and complained of pain. R. at 19. The ALJ also addressed why she found a mild limitation in Plaintiff's ability to adapt and manage herself. The ALJ found this based on Plaintiff's testimony about limits in performing household chores and hygiene due to her physical

---

[6] On appeal in the Fourth Circuit, the plaintiff in *Camille B.* again argued "that ALJ Bright neglected to consider [the plaintiff's] mental limitations in assessing her residual functional capacity[.]" *Brooks*, 60 F.4th at 739. The Fourth Circuit remanded on another ground and did not disturb the *Camille B.* decision that the ALJ was not obligated to include RFC limitations to account for mild impairments associated with non-severe impairments. *Id.*

impairments. R. at 19. The ALJ considered Plaintiff's claims that she has difficulty showering, uses an automated vacuum, and the fact that her husband helps with household chores. R. at 22.

The ALJ discussed Plaintiff's medication, therapy, and therapy progress notes. R. at 18–19. The ALJ cited medical records that reported Plaintiff's memory was consistently within normal limits and her cognition was stable. R. at 19. The ALJ noted "[n]ot only are [Plaintiff's] psychological reports normal, but medical progress notes also show normal psychological function." R. at 18. The ALJ found Plaintiff's memory to be intact, her attention and concentration within normal ranges, her thought processes were ordered, and her insight and judgment were intact. R. at 18. The ALJ considered that Plaintiff takes Xanax for anxiety and Wellbutrin for depression. R. at 23. The ALJ made her decision based on the fact that Plaintiff is stable from taking her medications as prescribed. R. at 27. Since the Plaintiff is stable on her medication, her mental impairments are controlled and do not prevent her from performing basic work activities. Importantly, in sum, the medical records do not show, and Plaintiff does not argue, that she is incapable of working because of these non-severe, mild mental impairments.

In light of the ALJ's robust analysis of Plaintiff's limitations regarding her abilities to concentrate, persist, and keep pace, and adapt and manage herself, the ALJ did not err by not including RFC limitations related to those findings. As required by *Mascio*, the ALJ's decision provides adequate explanation why RFC limitations relating to those categories were not warranted. For example, while the ALJ found that Plaintiff has a mild impairment in her ability to concentrate, persist, and keep pace, there were no records to suggest—and the ALJ did not find—that Plaintiff has problems with her memory or concentration. R. at 18-19. Here, the ALJ concluded that Plaintiff's mild impairments would not impact her ability to do basic work activities, so the ALJ did not err by not including an RFC limitation to account for her mental

impairments. Lastly, it is worth noting that not only did the ALJ find Plaintiff's mental impairments to be mild, she also found them to be non-severe, meaning they do not significantly limit her physical or mental ability to do basic work activities

Thus, the ALJ's decision to not include RFC limitations because of Plaintiff's non-severe, mild mental impairments is supported by substantial evidence. The ALJ applied the proper legal standard considering *Mascio* and other cases from this Court. Furthermore, even if a limitation from a mild impairment was required in the RFC analysis, the ALJ sufficiently explained why she did not include a limitation for Plaintiff's mental impairments. The ALJ created an accurate and logical bridge between the medical records of Plaintiff's mental impairment and the RFC. The ALJ simply decided that no limitations were necessary to include in the RFC based on these non-severe, mild impairments. Therefore, the ALJ did not err.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 9, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 11, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure

Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
April 5, 2023